The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner George T. Glenn II and the briefs and oral arguments on appeal to the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission affirms in part and reverses in part the Opinion and Award of the deputy commissioner and enters the following Opinion and Award:
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as an executed Pre-Trial Agreement, as
 STIPULATIONS
1. The parties were subject to the North Carolina Workers Compensation Act at the time of the incident. The employer employed the requisite number of employees to be bound by the Act.
2. The employer-employee relationship existed at the time of the incident giving rise to this action.
3. The compensation carrier on the risk was Insurance Company of the State of Pennsylvania.
4. Plaintiffs average weekly wage, as stipulated at the hearing before the deputy commissioner, was $337. 36 per week, yielding a compensation rate of $225. 12 per week.
5. The alleged date of injury by accident was June 17, 1997.
6. The parties also stipulated into evidence plaintiffs medical records as later supplemented following the deposition testimony.
7. Following the hearing, the parties stipulated into evidence employment records for plaintiff from Wal-Mart, CNC and Coordinated Health Services for a period of time both before and after June 17, 1997.
8. The deposition testimony of Dr. Nelson, Dr. St. Clair and Dr. Grubb is received into evidence.
***********
The Full Commission on its own motion is removing pp. 326-348 and pp. 352-353 from the transcript as these pages were erroneously included in the record by the Commission.
***********
Based upon the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a twenty-six year old man at the time of the hearing before the deputy commissioner. He had completed high school and two years of additional studies in auto mechanics.
2. On June 17, 1997, plaintiff was employed by defendant-employer and as a part of his job he unloaded merchandise from tractor-trailers.
3. On June 17, 1997, plaintiff was unloading TVs from a tractor-trailer. As he was lifting a TV he heard his back pop and felt pain shoot down his lower back into his legs. Plaintiff told his supervisor of the incident and she filed a report of the incident.
4. Plaintiff was seen and treated in the emergency room at Good Hope Hospital for the pain he was experiencing as a result of the incident. Plaintiff was taken out of work for the remainder of the day, but he returned to work the next day. On June 17, 1997, plaintiff sustained an injury to his back arising out of and in the course of his employment and as a direct result of a specific traumatic incident of the work assigned.
5. At the time of the June 17, 1997 incident at Wal-Mart, plaintiff was also working part-time for a company known as CNC.
6. Prior to June 17, 1997, plaintiff had injured his back several times, including a 1995 workers compensation claim, a car accident in 1994 or 1995, a car accident on February 12, 1996 and possibly another car accident in September 1996.
7. Beginning in May 1997, plaintiff was in physical therapy for back pain related to the February 12, 1996 car accident and such therapy continued until July 1997.
8. On June 26, 1996, plaintiff was treated at Cardinal Healthcare for complaints of midback pain. Thereafter, other than physical therapy for his February 12, 1996 injury, plaintiff did not seek further treatment for his back until October 1997. On October 20, 1997, plaintiff gave his medical provider a history of having reinjured himself while working as a stockman one month prior. On October 23, 1997, plaintiff reported to Nurse Russell that he had a back injury at work on October 21, 1997. On October 30, 1997, plaintiff reported to Cardinal Healthcare that he hurt his back at work while lifting boxes.
9. Plaintiff was diagnosed with back strain on October 20, 1997 and given restrictions of no lifting, bending, stooping or prolonged standing. On October 30, 1997, his diagnosis was thoracic/lumber spasms.
10. Following October 1997, plaintiff sought medical treatment with regard to his back pain on a more regular basis, ultimately seeking treatment from Dr. Jennifer Seddon, Dr. St. Clair, a neurosurgeon, Dr. Nelson, an orthopedic surgeon and Dr. Grubb, an orthopedic surgeon.
11. In January 1998, plaintiff underwent an MRI which revealed two herniated discs at L4-5 and L5-S1. Dr. St. Clair, a neurosurgeon, did not feel the discs were operable discs. Based upon his treatment records in February 1998, Dr. St. Clair felt plaintiff had improved.
12. Dr. Nelson, who began treating plaintiff in February 1998, felt the discs were operable lesions.
13. Since February 1998, plaintiff has undergone epidural steroid injections at the recommendation of Dr. Nelson and has sought treatment with Dr. Grubb, an orthopedic surgeon in Chapel Hill. Dr. Grubb testified that more diagnostic studies were needed before he will know whether surgery is indicated.
14. Dr. St. Clair and Dr. Nelson were of the opinion that they did not know what caused the herniated discs found in plaintiffs back. They acknowledged that it could have been caused by the incident at work on June 17, 1997, but they also were of the opinion that it could have been caused by the prior car accident, or by no event at all. Plaintiff did not tell Dr. St. Clair or Dr. Nelson about his prior injuries. Drs. St. Clair and Nelson believed, based on the history given by plaintiff, that plaintiffs pain level increased significantly after his June 17, 1997 injury.
15. Dr. Grubbs opinion was also based on his perception that plaintiffs pain had changed following the incident at Defendant Wal-Mart and that the discs went from being reversible (or could correct themselves without surgery) to irreversible and would need surgery to correct the disc problem. He based his opinions on his impression that the leg pain began in June 1997 and that the pain became constant at that time.
16. The medical evidence does not support the assumptions of Drs. Grubb, St. Clair and Nelson that plaintiffs pain level increased significantly immediately after the injury. Plaintiff sought treatment at the emergency room of Betsy Johnson Memorial Hospital for back pain on June 13, 1997, four days before his lifting injury at work on June 17, 1997. Plaintiffs physical therapy progress notes from May 21, 1997, the initial evaluation and treatment, indicate that plaintiff had complaints of pain radiating from his shoulder into low back and left hip. Physical therapy notes from June 2, 1997, June 4, 1997, June 12, 1997 and June 13, 1997 indicate that plaintiff continued to complain of mid to low back pain. On June 17, 1997, before his injury later that night, plaintiff reported to physical therapy that his back had gotten worse, that he lifts and carries heavy boxes at work which contributes to his discomfort and that he had knots in his back. On June 19, 1997 plaintiff reported to physical therapy that he heard his back pop at work. This report references his June 17, 1997 injury. On June 27, 1997, plaintiff had no complaints of pain or discomfort and on July 3, 1997 plaintiff reported he had been doing "so so and that he had been walking on a treadmill without difficulty or discomfort. On July 7, 1997, plaintiff had no complaints. On July 10, 1997, plaintiff reported stiffness in his low back which was improving. On July 18, 1997, plaintiff reported that his back was doing better and that he had occasional pain in his lower back area. Plaintiff failed to attend numerous physical therapy appointments and was released from physical therapy on July 22, 1997.
17. Based upon plaintiffs reports to physical therapy of improved or no back pain, evidence that plaintiff did not seek medical treatment for his back after his July 22, 1997 release from physical therapy until on or about October 20, 1997 and evidence that plaintiff reported new injuries to his back in September and October, 1997; the Full Commission does not accept as credible, plaintiffs contention that his back pain increased in degree and frequency after June 17, 1997 as a result of his injury of June 17, 1997.
18. Plaintiff has failed to prove by the greater weight of the evidence that he sustained any disability due to his back injury of June 17, 1997. On June 17, 1997, plaintiff temporarily exacerbated his pre-existing back condition causing him to seek medical treatment. Plaintiffs pain symptoms from the June 17, 1997 incident had resolved by June 27, 1997.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission conclude as follows:
 CONCLUSIONS OF LAW
1. Plaintiff bears the burden to establish the necessary causal relationship between the incident and the condition for which he seeks compensation. Testimony necessary to establish such a relationship is more than just a possibility, it requires testimony to "a reasonable scientific probability. Click v.Freight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980); Phillips v.U.S. Air, Inc., 120 N.C. App. 538, 542, 463 S.E.2d 259,262 (1995).
2. Plaintiff sustained an injury due to a specific traumatic incident of the work assigned on June 17, 1997. This injury caused the need for medical treatment only and had completely resolved by June 27, 1997. Plaintiff sustained no disability as a result of his injury. Defendant is required to pay for plaintiffs June 17, 1997 medical treatment. N.C. Gen. Stat. 97-2(6) and 97-25.
3. Plaintiff has not satisfied his burden of establishing that his current back condition is causally related to the June 17, 1997 incident at Defendant Wal-Mart.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following
 AWARD
1. Plaintiffs claim for workers compensation indemnity benefits must under the law be and the same is hereby DENIED.
2. Defendants shall pay medical expenses for plaintiffs June 17, 1997 hospital treatment.
3. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
BSB:md